# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM BUCK,
No. R-21689,

Plaintiff,

No. 17−cv−270-DRH

v.

SGT. YOUNG,
C/O SLAVENS,
LIEUTENANT CALLAIS,
WITHOFF,
NURSE PAM,
NURSE TRIPP,
NURSE JILL,
LARISSA WANDRO,
SYLVIA BUTLER,
MS. PAPPAS,
MS. MEYERS,
MR. WEATHERFORD,
GAIL WALLS,

Defendants.


## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff William Buck, an inmate in Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff contends officials at Menard subjected him to unconstitutional conditions of confinement while he was on suicide watch. Plaintiff also alleges that he was the victim of excessive force on two occasions during his suicide watch and was denied appropriate medical care with respect to

injuries stemming from the excessive force incidents.  In connection with these claims, Plaintiff sues Sgt. Young (Correctional Officer), C/O Slavens (Correctional Officer), Lieutenant Callais (Correctional Officer), Withoff (Correctional Officer), Nurse Pam (Nurse), Nurse Tripp (Nurse), Nurse Jill (Nurse), Larissa Wandro (Grievance Officer), Sylvia Butler (Physician), Ms. Pappas (Mental Health Professional), Ms. Meyers (Mental Health Professional), Mr. Weatherford (Mental Health Professional), Gail Walls (Healthcare Administrator).  According to the Complaint, Plaintiff sues all defendants in their individual and official capacities. Plaintiff seeks monetary damage and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless.  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## **The Complaint**

Plaintiff was on suicide watch between October 27, 2016 and December 7, 2016. (Doc. 1, pp. 9-11). During his suicide watch, Plaintiff was initially housed in a cell in the Healthcare Unit. (Doc. 1, p. 9). The first transfer occurred on November 12, 2016, when Plaintiff was transferred to cell number 507 in North 2. (Doc. 1, p. 10). Plaintiff was subsequently transferred twice. (Doc. 1, pp. 9-11). The second and final transfer occurred on November 23, 2016, when Plaintiff was transferred to cell number 217 in North 2. (Doc. 1, p. 11). During his confinement in these cells, Plaintiff was subject to the following conditions: (1) he had only a suicide vest and blanket in his cell and was not permitted to clean or replace them, even after they were soiled; (2) he was not permitted to shower; (3) he was not allowed to have a toothbrush or toothpaste and his mouth became infected; (4) he was not allowed any items to clean himself; (5) in each cell the walls and flooring were covered in urine, feces, and/or blood; (6) in each cell, the

mattress provided was covered in urine, feces, and/or blood; (7) the cells were not cleaned and Plaintiff was not allowed any cleaning supplies; (8) Plaintiff could not clean himself after urinating or defecating and ate finger food with soiled fingers; (9) the lights in Plaintiff's cell were turned on at all times, depriving Plaintiff of sleep; (10) Plaintiff was bitten by bugs; and (11) Plaintiff developed MRSA. (Doc. 1, pp. 9-11).

The Complaint indicates that Pappas (Doc. 1, p. 10, ¶ 8-9), Meyers (Doc. 1, p. 11 ¶ 16-17) and Weatherford (Doc. 1, p. 11, ¶ 22) intentionally had Plaintiff placed in unsanitary conditions. Additionally, Plaintiff alleges that Weatherford (Doc. 1, p. 11, ¶ 18) Pappas (Doc. 1, p. 11, ¶ 18), Meyers (Doc. 1, p. 11, ¶ 18), and Withoff (Doc. 1, p. 14) were aware of these unsanitary conditions, and failed to take any action to assist Plaintiff.

Plaintiff also alleges that while he was in solitary confinement, he was subjected to excessive force on two occasions. The first excessive force incident occurred on November 20, 2016, when Plaintiff was in cell number 507 in North 2. (Doc. 1, p. 12). According to Plaintiff, he asked to speak with a lieutenant. (Doc. 1, p. 12). Slavens and Callais responded to his request. (Doc. 1, p. 12). At the time, Plaintiff's arm was in the opened chuckhole. (Doc. 1, p. 12). Slavens told Plaintiff he was going to break his arm while it was in the chuckhole. (Doc. 1, p. 12). Callais then ordered Slavens to go ahead and break Plaintiff's arm. (Doc. 1, p. 12). Slavens grabbed Plaintiff's right thumb and began to twist and shove Plaintiff's arm with all of his body weight. (Doc. 1, p. 12). Slavens then shoved

Plaintiff into rusty metal in Plaintiff's cell. (Doc. 1, p. 12). Plaintiff's knee was punctured and there was a gash in his left foot. (Doc. 1, p. 12). Plaintiff experienced severe pain in his foot, knee, shoulder, wrist, and thumb. (Doc. 1, p. 12).

Slavens and Callais refused Plaintiff's initial requests for medical assistance. (Doc. 1, p. 12). Although Callais subsequently returned with a nurse, Pam, she did not provide appropriate medical care. (Doc. 1, p. 13). Pam told Plaintiff he deserved worse and did nothing more than throw two bandages into Plaintiff's cell. (Doc. 1, p. 13). The following morning, another nurse, Jill and Young ignored Plaintiff's requests for medical treatment. (Doc. 1, p. 13).

The second excessive force incident took place on the afternoon of November 21, 2016. According to Plaintiff, Young (who was aware of Plaintiff's prior injuries) approached Plaintiff's cell. (Doc. 1, p. 13). Then, without cause, Young pepper sprayed Plaintiff and twisted Plaintiff's already injured arm, causing severe pain. (Doc. 1, p. 13). At some point during the assault, Withoff appeared and cuffed Plaintiff through the chuckhole. (Doc. 1, p. 13). Plaintiff was then escorted, with his arms cuffed behind his back and without any clothing through the gallery to the HCU. (Doc. 1, p. 13). Plaintiff was taken to be examined by another nurse, Anna. (Doc. 1, p. 13). Anna performed a cursory exam and then left without providing treatment. (Doc. 1, p. 14). Plaintiff contends his shoulders, wrists, and thumbs felt broken, he was bleeding, and in extreme pain. (Doc. 1, p.

14). Plaintiff was then returned to his cell without receiving any treatment. (Doc. 1, p. 14).

On November 22, 2016, Plaintiff was seen by another nurse, Tripp. (Doc. 1, p. 14). Plaintiff was told he was lucky to see her at all. (Doc. 1, p. 14). Tripp examined Plaintiff but did not provide any medical care. (Doc. 1, p. 14). Plaintiff told Meyers about the assault but, other than contacting a psychiatrist, she did not provide him with any assistance. (Doc. 1, p. 14).

On November 23, 2016, Plaintiff was examined by Moldenhauser (not a named Defendant) in the presence of several corrections officers. (Doc. 1, p. 14). Moldenhauser ordered x-rays for Plaintiff. But informed Plaintiff he did not want trouble with the guards and was going to indicate that Plaintiff had scrapes as opposed to a puncture and gash. (Doc. 1, p. 14). Moldenhauser did not receive an x-ray until December 19, 2016, after he filed an emergency grievance. (Doc. 1, p. 14).[1] Plaintiff does not provide any information with regard to the medical assessment of his x-rays. Aside from the bandages he received on the day of the initial assault and the subsequent x-ray, Plaintiff has not received any treatment for his injuries. (Doc. 1, p. 15). Plaintiff continues to suffer from severe pain. (Doc. 1, p. 15). In addition, he has trouble with mobility and with lifting things. (Doc. 1, p. 15).

Plaintiff contends that he has received inadequate treatment as a result of policies implemented by Walls, a healthcare administrator. (Doc. 1, p. 15).

---

[1] The related Grievance Officer's Report attached to the Complaint indicates that x-rays were not taken until December 19, 2016 because Plaintiff was on crisis watch. (Doc. 1-1, p. 4).

Additionally, Plaintiff contends that Wandro, a grievance officer, failed to properly investigate grievances and otherwise mishandled his grievances relating to the alleged constitutional violations. (Doc. 1, p. 15).[2]

With respect to Butler, Plaintiff merely alleges that (1) he spoke to Butler about his treatment on November 4, 2016 (Doc. 1, p. 10, ¶ 7) and (2) he preferred to speak to Butler and constantly asked staff members to allow him to speak to Butler, but the staff refused (Doc. 1, p. 10, ¶ 16, 18).

In connection with these claims, Plaintiff sues all Defendants in their individual and official capacities. (Doc. 1, p. 16). Plaintiff seeks monetary damages. (Doc. 1, p. 16). Plaintiff also seeks injunctive relief. (Doc. 1, p. 17). Specifically, Plaintiff seeks further treatment for his injuries, an MRI, and an order directing Menard to adopt or refrain from enforcing certain policies pertaining to prisoner medical care. (Doc. 1, p. 17).

## Discussion

As a preliminary matter, it is necessary to clarify who the defendants are in the instant action. The body of the Complaint raises several allegations with regard to a physician identified as "Moldenhauser." Moldenhauser is not identified as a defendant in the caption of the Complaint or in section of the Complaint that identifies the parties. Because this individual is not listed in the caption by name or by Doe designation, he will not be treated as a defendant in

---

[2] The grievances attached to the Complaint do not indicate that Wandro "turned a blind eye" to Plaintiff's complaints. The grievances indicate Wandro conducted investigations of Plaintiff's grievances and made recommendations in accordance therewith. (Doc. 1-1).

this case, and any claims against him should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"); Id. at 553 ("[It is] unacceptable for a court to add litigants on its own motion. Selecting defendants is a task for the plaintiff, not the judge.").

Turning to the substantive allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**Count 1** - Defendants subjected Plaintiff to unconstitutional conditions of confinement while he was on suicide watch between October 27, 2016 and December 12, 2016, in violation of the Eighth Amendment.

**Count 2 -** Eighth Amendment claim against Clavens and Callais for using excessive force against Plaintiff on or about November 20, 2016.

**Count 3 -** Eighth Amendment claim against Young for using excessive force against Plaintiff on or about November 21, 2016.

**Count 4 -** Eighth Amendment deliberate indifference claim to serious medical needs against Defendants for refusing to treat and/or inadequately treating Plaintiff's injuries related to the excessive force incidents.

**Count 5 -** Eighth Amendment deliberate indifference claim against Walls for instituting policies that led to inadequate medical care and delayed medical care.

**Count 6 -** Fourteenth Amendment due process claim against Wandro for denying Plaintiff's grievance pertaining to the excessive force incidents and his conditions of confinement during suicide watch.

## Count 1

Plaintiff alleges that between October 27, 2016 and December 12, 2016, while on suicide watch, he was forced to live in cells that were smeared with someone else's blood and/or smeared with urine and feces. During this time, Plaintiff was not allowed to leave his cells, his cells were not cleaned and he was not given anything to clean them, he was not permitted to shower and was unable to clean himself, he was forced to eat finger foods with soiled hands, and the lights in his cell remained on at all times.

Plaintiff's allegations, taken as true, satisfy the objective prong of the Eighth Amendment inquiry. *See Vinning–El v. Long*, 482 F.3d 923, 923–25 (7th Cir.2007) (reversing summary judgment for defendant where prisoner was deprived of basic sanitation items and incarcerated for six days in a cell in which blood and feces were smeared the walls, water covered the floor, and the sink and toilet did not work); *Johnson v. Pelker,* 891 F.2d 136, 139–40 (7th Cir.1989) (prisoner stated an Eighth Amendment claim where his requests for cleaning supplies were ignored while he was incarcerated for three days in a cell that was smeared with human feces and was without running water); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ( "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment.").

With respect to the subjective prong, Plaintiff's allegations, indicate that Pappas (Doc. 1, p. 10, ¶ 8-9), Meyers (Doc. 1, p. 11 ¶ 16-17) and Weatherford (Doc. 1, p. 11, ¶ 22) intentionally had Plaintiff placed in unsanitary conditions. Additionally, Plaintiff alleges that Weatherford (Doc. 1, p. 11, ¶ 18) Pappas (Doc. 1, p. 11, ¶ 18), Meyers (Doc. 1, p. 11, ¶ 18), and Withoff (Doc. 1, p. 14) were aware of these unsanitary conditions, and failed to take any action to assist Plaintiff. Giving Plaintiff the inferences to which he is entitled at this stage, he has stated a claim against Weatherford, Pappas, Withoff, and Meyers. Plaintiff has not alleged specific facts demonstrating personal involvement as to the remaining Defendants.

Accordingly, Count 1 shall receive further review as to Weatherford, Pappas, Withoff, and Meyers. Count 1 shall be dismissed without prejudice as to the remaining Defendants.

**Count 2 and 3**

A prison official inflicts cruel and unusual punishment on an inmate, in violation of the Eighth Amendment, when the official intentionally uses excessive force against the inmate without penological justification. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hudson v. McMillian*, 503 U.S. 1 (1992). In order to prevail on an excessive force claim, an inmate must demonstrate that the force used by the defendant was not applied in a good-faith effort to maintain or restore discipline, but, rather, was applied maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 7. However, not every malicious touch by a prison

official gives rise to a cause of action under the Constitution. Unless the physical force is "repugnant to the conscience of mankind", force that is *de minimis* is not actionable. Id. at 9–10 (*quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (internal quotations omitted).

Here, Plaintiff alleges that Slavens, Callais, and Young used excessive force against him without any apparent penological justification. (Doc. 1, pp. 12-13) Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated colorable excessive force claims against Slavens and Callais (Count 2) and Young (Count 3).

**Count 4**

Prison officials and medical personnel violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical or mental health needs. *Rasho v. Elyea*, —— F.3d ——, 2017 WL 892500 (7th Cir. March 7, 2017) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016)). In order to state a claim, a plaintiff must demonstrate that he suffered from a serious medical or mental health need (*i.e.*, objective standard) and the prison official responded with deliberate indifference (*i.e.*, subjective standard). *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 834; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)).

Plaintiff's physical injuries following the excessive force incidents satisfy the objective component for this claim. Plaintiff describes a puncture to his left knee

and a gash in his left foot, both of which were bleeding.  He also describes damage

to his knee, shoulder, wrist, and thumb that caused severe pain.  Plaintiff further

alleges that he believed his shoulder, wrist, and/or thumb were broken.

Plaintiff's allegations suggest that Callais, Slavens, Pam, Jill, Young, Tripp,

and Meyers, responded to Plaintiff's injuries and complaints with deliberate

indifference.  Plaintiff alleges that, immediately following the excessive force

incident on November 20, 2016, Callais and Slavens initially refused to provide

him with medical treatment.  (Doc. 1, p. 13, ¶ 9).  Subsequently, Callais returned

with Pam (a nurse).  (Doc. 1, p. 13, ¶ 11).  Pam told Plaintiff he "should have

gotten worse" and threw two bandages into Plaintiff's cell.  (Doc. 1, p. 13, ¶ 12).

Plaintiff did not receive any further medical care that night.

On the morning of November 21, 2016, Jill and Young refused to provide

Plaintiff with medical assistance.  (Doc. 1, p. 13, ¶ 14-15).  In fact, Young returned

to Plaintiff's cell in the afternoon and initiated the second excessive force incident

against Plaintiff.  (Doc. 1, p. 13, ¶ 16-18).  Thereafter, Plaintiff was seen by Anna

and Tripp.  (Doc. 1, p. 14, ¶ 21-27).  Plaintiff's alleges that Anna and Tripp

observed Plaintiff's injuries but refused to provide medical care and/or provided

inadequate medical care.  *Id.*  Plaintiff asserts he spoke to Meyers about the

assault but other than contacting a psychiatrist, she did not seek any medical

assistance for Plaintiff.  (Doc. 1, p. 14, ¶ 24).

With respect to Count 4, Plaintiff's Complaint does not state a claim as to

Withoff (Plaintiff alleges that Withoff took Plaintiff for medical treatment following

the second excessive force incident), Butler (the allegations as to Butler do not speak to this claim), Wandro (the allegations as to Wandro do not speak to this claim), Pappas (the allegations as to Pappas to not speak to this claim), Weatherford (the allegations as to Weatherford do not speak to this claim), and Walls (to the extent that Walls' policies amount to deliberate indifference, they are addressed in Count 5). Accordingly, Withoff, Wandro, Butler, Pappas, Weatherford, and Walls, shall be dismissed without prejudice as to Count 4.

**Count 5**

To recover damages for his claim, Plaintiff must establish that Walls was personally responsible for the deprivation of a constitutional right. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). While an official cannot be personally liable under a theory of *respondeat superior*, " '[a]n official satisfies the personal responsibility requirement of section 1983 … if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.' " *Id.* (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). Furthermore, Plaintiff must allege that there was "an official policy or custom that caused the injury." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).

Plaintiff contends he was denied appropriate care because of several policies implemented by Walls. According to Plaintiff, Walls has implemented the following policies: (1) allowing correctional officers to remain in the examination rooms during medical evaluations; (2) instructing medical staff to ignore sick call requests that are controversial (*i.e.* injuries caused by correctional officers); and

(3) implementing a sick call system (placing sick call request slips in a box rather than providing a signup sheet) that allows medical staff to destroy undesirable sick call slips without detection. (Doc. 1, p. 15). Plaintiff alleges that because his requests for treatment were "controversial" (*i.e.* involved injuries caused by staff), his requests were ignored and/or he received inadequate care.

At this juncture, Plaintiff has provided sufficient factual information to allow this claim to proceed beyond screening for further development of the factual record.

**Count 6**

The fact that Wandro denied Plaintiff's grievance gives rise to no independent claim under the Due Process Clause of the Fourteenth Amendment. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). It is well-settled that the mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). This is because "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure. *Id*. For this reason, the failure of state prison officials to follow their own procedures does not, by itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681

F.2d 1091, 1100-01 (7th Cir. 1982). On this basis, Count 6 shall be dismissed with prejudice against Wandro for failure to state a claim upon which relief may be granted.

## Injunctive Relief

As previously noted, Plaintiff is seeking injunctive relief. The Court construes Plaintiff's request for injunctive relief as a request for relief <u>at the close of the case</u>. <u>Should Plaintiff wish to request a TRO or a preliminary injunction, he should file a separate motion pursuant to Rule 65(a) or (b) indicating the exact form of relief he seeks, the reasons why he seeks said relief, and the factual allegations supporting his request</u>. He may do so at any time during the pending action.

With respect to Plaintiff's request for injunctive relief, the warden is the appropriate party. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, the Clerk will be directed to add Jacqueline Lashbrook, the warden of Menard, in her official capacity, for purposes of carrying out any injunctive relief that is ordered. As to all other Defendants, to the extent that any claims have been allowed to proceed, they go forward against these Defendants in their individual capacities only.

## Pending Motions

Plaintiff's Motion for Appointment of Counsel (Doc. 3) shall be **REFERRED** to a United States Magistrate Judge for a decision.

## <u>Disposition</u>

The Clerk is **DIRECTED** to **TERMINATE WANDRO** and **BUTLER** as parties in CM/ECF.

The **Clerk** is **DIRECTED** to add **JACQUELINE LASHBROOK**, the warden of Menard, in her official capacity, for purposes of carrying out any injunctive relief that is ordered.

**IT IS HEREBY ORDERED** that **COUNT 1** shall receive further review as to **WITHOFF, PAPPAS, MEYERS, AND WEATHERFORD** in their individual capacities only. **COUNT 1** is **DISMISSED** without prejudice as to **YOUNG, SLAVENS, CALLAIS, PAM, TRIPP, JILL, WANDRO, BUTLER, AND WALLS** for failure to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review as to **SLAVENS** and **CALLAIS**, the only Defendants named in connection with this claim, in their individual capacities only.

**IT IS FURTHER ORDERED** that **COUNT 3** shall proceed as to **YOUNG,** the only Defendant named in connection with this claim, in his individual capacity only.

**IT IS FURTHER ORDERED** that **COUNT 4** shall proceed as to **YOUNG, SLAVENS, CALLAIS, PAM, TRIPP, JILL,** and **MEYERS** in their individual capacities only. **COUNT 4** is **DISMISSED** without prejudice as to **WITHOFF, WANDRO, BUTLER, PAPPAS, WEATHERFORD,** and **WALLS**.

**IT IS FURTHER ORDERED** that **COUNT 5** shall proceed as to **WALLS,** the only Defendant named in connection with this claim, in her individual capacity only.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED** with prejudice as to **WANDRO**, the only Defendant named in connection with this claim.

**IT IS HEREBY ORDERED** that as to **COUNTs 1, 2, 3, 4, and 5** the Clerk of the Court shall prepare for Defendants **YOUNG, SLAVENS, CALLAIS, WITHOFF, PAM, TRIPP, JILL, PAPPAS, MEYERS, WEATHERFORD, AND WALLS:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on Plaintiff's Motion for Appointment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), if all parties consent to such a referral.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed in forma pauperis is granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Signed this 11th day of April, 2017.

Judge Herndon
2017.04.11
10:16:35 -05'00'

**UNITED STATES DISTRICT JUDGE**