IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM BUCK,<br><br>           Plaintiff,<br><br>v.<br><br>DENNIS YOUNG, *et al.*,<br><br>           Defendants. | Case No. 17-cv-00270-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Jury trial in this case was set to begin February 22, 2022. Given the number of pretrial matters that remained unresolved, the Court delayed jury selection until February 23, 2022, and dedicated the first day to pending motions and settlement negotiations.

*Settlement*

At the end of the day on February 22, 202, Buck and Defendants Slavens, Callais, Young, Hanna, Crane, and Witthoft ("IDOC Defendants") reached a settlement agreement. Thus, Buck is now proceeding to trial on the following claims against the remaining defendants, Pappas, Meyer, Weatherford, and Tripp ("Wexford Defendants"):

**Count 1:**  Defendants Pappas, Meyer, and Weatherford subjected Buck to unconstitutional conditions of confinement while he was on suicide watch between October 27, 2016 and December 12, 2016, in violation of the Eighth Amendment.[1]

**Count 4:**  Eighth Amendment deliberate indifference claim to serious medical needs against Defendant Tripp for refusing to treat and/or inadequately treating Buck's injuries related to excessive force incidents.

---

[1] This claim is limited to the unsanitary conditions allegedly present in the cells and excludes issues concerning lights and the provision of hygiene items, which were dismissed at summary judgment. (Doc. 200).

The IDOC Defendants have 30 days to produce settlement documents to Buck.

***Objections to Supplemental Witness List filed by Plaintiff on February 8, 2022 (Doc. 277)***

Plaintiff William Buck is currently proceeding *pro se.* Following ruling on the motions for summary judgment, on November 23, 2020, the Court recruited counsel, Attorney Telken, to represent Buck and assist him in preparing for trial or settlement negotiations. (Doc. 215). The Court reopened discovery at Telken's request, and trial was scheduled for February 22, 2022. (Doc. 237). After several months of further discovery, Telken filed a motion to withdraw as counsel. (Doc. 241). Telken stated that he and his client had a fundamental disagreement about what actions should be taken in this case. Because of the irreconcilable break-down in the relationship, Telken believed that he was no longer able to effectively represent Buck's interests in this case. The "assistance of a pro bono lawyer in civil litigation is a privilege[,]" *Cartwright v. Silver Cross Hosp.,* 962 F.3d 933, 936 (7th Cir. 2020), and as it appeared Buck no longer wished to take advantage of that privilege, even as trial was quickly approaching, the Court granted the motion on October 26, 2021. (Doc. 246). Thus, Buck is now representing himself and has struggled with pretrial matters.

On January 19, 2022, Buck timely filed pretrial disclosures. (Doc. 258). In his disclosures, he lists the following individuals as witnesses: Kato Ware, Anthony White, Gay, and Dennis Rush, "the suicide close watch officers on the dates of the assaults perpetrated against [him]," Dr. Tracy, Nurse Anna, and himself. He also stated that he, Ware, White, Rush, and Gay may testify as experts regarding their experience of being incarcerated in the Illinois Department of Corrections. Buck identified "all affidavits documents and other evidence part of the record as exhibits he will use." Defendants objected to his witnesses on grounds they were not properly disclosed during discovery and that testimony regarding the medical or mental health treatment or conditions of confinement experienced by other inmates is not relevant to the alleged constitutional violations experienced

by Buck. (Doc. 266, 268).

At the Final Pretrial Conference, the Court determined that Buck did not properly disclose any witnesses as experts, including himself, under Federal Rule 26(a)(2). (Doc. 279, p. 9). However, the Court reserved ruling on excluding these witnesses testifying as fact witness. The disclosure of the witness list was incomplete. It did not contain first and last names for all the witnesses. It was also not exactly clear what testimony would be elicited by Buck, and thus, the Court could not make a relevancy determination.

Furthermore, Buck did not seem to understand the procedures for calling witnesses to appear at trial. He had not filed a motion with the Court or indicated in any way that he needed assistance in arranging the appearance of witnesses, including the issuance of writs for incarcerated individuals or subpoenas of unincarcerated individuals. At the Final Pretrial Conference on February 4, 2022, eighteen days before trial, Buck informed the Court for the first time that some of the witnesses are currently incarcerated, and he wanted to speak to them in preparation for trial but was unable to because of IDOC regulations limiting communication between inmates. Because the Court did not want to "waste resources producing witnesses who will not offer relevant, admissible testimony," and given Buck's *pro se* status, the Court gave Buck an opportunity to provide the Court with a more complete witness list. *See Tatum v. Lucas,* No. 11-C-1131, 2021 WL 5926071, at *2 (E.D. Wisc. Dec. 15, 2021) (notifying a *pro se* plaintiff that he must show that each witness had personal knowledge of the alleged events prior to issuing writs for incarcerated witnesses). Buck was directed to file a motion identifying specific witnesses that he wanted to communicate with in preparation for trial and to include the general subject matter of their testimony. The Court specifically informed him that it was not sufficient to simply state that an

individual was an eyewitness.² Defendants were directed to file any new objections by February 15, 2022.

Buck provided his supplemental disclosures on February 8, 2022. (Doc. 277). He lists Kato Ware, Anthony White, Dennis Rush, Willie Booker, Dr. Tracy, and Anthony Gay as witnesses. Contrary to the Court's instruction, for each individual he states that the witness will "be able to testify to witnessing the circumstances of Plaintiff's lawsuit and other matters."

Defendants again object to Buck's witnesses on the basis they were not properly disclosed during discovery and would not provide relevant testimony. (Doc. 282, 285).³ The discovery exhibit shows that in response to interrogatory #11 served on March 20, 2018 by the Wexford Defendants, asking for the name and statement from "any person concerning the incident or your claimed injuries" Buck responded "many IDOC staff and inmates." (Doc. 287-3). Defendants argue that because Buck did not disclose his witnesses, allowing their testimony would be prejudicial and, at this juncture in the case, constitute an undue delay.

Buck filed a reply to the objections arguing that Defendants knew of his witnesses by virtue of his Complaint and attached affidavits and his deposition. (Doc. 293). He claims he "turned over these witness[es] in his summary judgment motion," and Defendants had ample time to interview them when the Court reopened discovery. He also claims that Defendants did not properly disclose their witnesses in response to a discovery request.⁴

When a party fails to supplement discovery information under Rule 26(e)(1), the "sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its

---

² The Court gave Buck an example of the type of information he needed to provide – inmate X witnessed the excessive force incident on November 20.
³ In light of the settlement, the motion to join co-defendants' objections to Plaintiff's disclosures (Doc. 285) filed by Defendants Callais, Crane, Hanna, Slavens, Witthoft, and Young is **MOOT**.
⁴ In light of the settlement agreement, Defense counsel for Wexford Defendants testified that he would only be calling Defendants and records custodians for the purpose of authenticating the medical records entered into evidence.

violation…was either justified or harmless." *David v. Caterpillar, Inc.,* 324 F. 3d 851, 857 (7th Cir. 2003) (internal citations and quotations omitted). When making a determination regarding a substantial justification or harmlessness, the Court is guided by the following factors:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Id.* (citations omitted).

The Court finds that Buck failed to properly disclose the witnesses during discovery. He did not provide their names when asked the identity of witnesses with knowledge of the facts or occurrences described in his Complaint, and answered generally, "many IDOC staff and inmates." Later, as discovery progressed, he did not supplement this general response to provide specific names as is required by Federal Rule Civil Procedure 26(e)(1). Following summary judgment, when Buck was recruited counsel and discovery was briefly reopened, these names were still not disclosed by recruited counsel. Thus, the question is whether Buck's failure to supplement his interrogatory response was "justified or harmless."

**Dr. Diana Tracy:** The Court does not find that Buck's failure to disclose Dr. Tracy as a witness was harmless or justified. Buck does not provide a reason for not supplementing his response to interrogatory #11 by providing her name. Rather, he simple argues she is mentioned elsewhere in the record, which should be sufficient for Defendants to be put on notice that she was a potential witness. The Court disagrees. There is no affidavit of her statement present in the record indicating the nature of her testimony, nor is she specifically mentioned by name in Buck's deposition. (*See* Doc. 173-1). When deposed, he testified that "the psych doctor came and talked to [him]…" on November 22, 2016. (Doc. 173-1, p. 18; Doc. 146, p. 9). In his motion for summary judgment, Buck identifies Dr. Tracy as the psych doctor he spoke with on November 22, but at

that point in the case it was too late for Buck to disclose new potential witnesses, as discovery had closed and Defendants could not conduct further investigation into this witness. (Doc. 146, p. 9). Allowing Buck to call Dr. Tracy as a witness is most certainly a surprise and prejudices Defendants, and there is no opportunity for them to cure this prejudice. As Buck failed to supplement his interrogatory response and provide Dr. Tracy's name, she is excluded from testifying. [5] *See Lujano v. Town of Cicero,* No. 07 C 4822, 2011 WL 6822204, at *6 (N.D. Ill. Dec. 23, 2011) ("[a] party cannot get around the obligations imposed by…Rule 26(e) by adding a name to its pretrial disclosure that has not previously been disclosed." (quoting *Mitchell v. Iowa Interstate RR Ltd.,* No. 07-1351, 2010 WL 2089305, at *2 (C.D. Ill. May 15, 2020))).

The Court further notes that even if Dr. Tracy was allowed to testify, Buck has not requested a subpoena form from the Court or submitted the appropriate sum of money, the daily witness fee and mileage costs, and the time for her to be timely served has passed.

**Anthony Gay:** Likewise, the Court finds that failing to disclose Anthony Gay as a witness during discovery is prejudicial to Defendants and not harmless or justified. This individual is mentioned in Buck's Complaint and deposition. Buck believes that Gay was housed in cell N2:05:07 prior to him being placed in that cell on November 12, 2016. (Doc. 173-1, p. 39; Doc. 1, p. 10). According to Buck, Gay had committed self-harm in the cell, and it was Gay's blood that remained in the cell at the time of his placement. However, Buck has not provided an affidavit from Gay, and he testified during his deposition that he does not know Anthony Gay and has never seen him. (Doc. 173-1, p. 39). Buck stated on the record that he wanted to call Gay as a witness because Gay had the same experiences on suicide watch and interactions with Defendants as Buck.

---

[5] Buck testified that Defendants had listed Dr. Tracy as a witness, and there was lengthy discussion regarding whether Buck would have an opportunity to cross examine Dr. Tracy or call her as an adverse witness. Upon further review of the record, Dr. Tracy was listed in the pretrial disclosures filed by Wexford Defendants as a witness they "may call…if the need arises." (Doc. 261, 264). However, Dr. Tracy was not listed as witness in the proposed final pretrial order and is not currently listed as a witness in the Final Pretrial Order adopted by the Court. (Doc. 280).

It appears Buck wants to use Gay's testimony to establish Defendants' propensity to commit bad acts, which is not admissible. *See Okai v. Verfuth,* 275 F. 3d 606, 610 (7 Cir. 2011) (discussing FED. R. EVID. 404(b)). Furthermore, Buck has not filed anything suggesting that Gay has actual knowledge of the facts at issue in this case. Buck testified that Gay was transferred to an outside hospital with considerable injuries after harming himself, and so it does not appear that Gay was celled near Buck during the time the alleged constitutional violations took place. "The Federal Rules of Civil Procedure are designed to avoid precisely the type of surprises at trial that [Buck] is advocating here." *Santiago v. Franklin,* No. 15 CV 1856, 2021 WL 929100, at *3 (N.D. Ill. Mar. 11, 2021). Defendants "have a right to investigate the background of each witness, determine what each witness might know about the relevant circumstances, and identify potential grounds for impeachment." *Tatum v. Lucas,* No. 11-C-1131, 2021 WL 5926071, at *2 (E.D. Wisc. Dec. 15, 2021). Thus, the disclosure of Gay as a witness on the eve of trial will prejudice Defendants, and he is excluded from giving testimony. *See* FED. R. CIV. P. 37(c).

As with Dr. Tracy, Gay is also an unincarcerated person. Buck states he believes Gay has been paroled. (Doc. 277). According to IDOC public records, Anthony Gay is no longer in the custody of the Illinois Department of Corrections.[6] Defense Counsel testified that he believed Gay has been released from custody several years ago. Buck does not seem to know Gay's whereabouts, and he has not requested the Court to issue a subpoena for Gay or prepaid the witness fee and mileage. Thus, the Court notes that regardless of the ruling, it would not be possible to timely issue and serve a subpoena for his appearance.

**Dennis Rush, Willie Booker, Kato Ware, and Anthony White:** Inmates Rush, Booker, Ware, and White were also not disclosed during discovery. In the Complaint, Buck lists Inmates

---

[6] *See* IDOC Individual in Custody Search, https://www2.illinois.gov/idoc/offender/pages/inmatesearch.aspx (last visited Feb. 21, 2022).

White, Rush, and Ware as witnesses and provides their affidavits. (Doc. 1, p. 16; Doc. 1-1, p. 7-10, 12-13). Based on the affidavits, Ware and White were both housed in North 2 suicide watch during the relevant periods in this case and near Buck's cell.

In his affidavit, Ware states that he witnessed Buck being placed in cell N2:05:07 without it being cleaned, and there was blood, feces, and saliva everywhere in the cell. (Doc. 1-1, p. 9). After placement in the cell, Ware states Buck's cell was never cleaned. Ware also asserts that he heard Buck ask for medical help, and he did not see anyone come take Buck to the hospital. As it appears Kato Ware has actual knowledge of the events alleged, and the subject matter of his testimony is in the record, the Court does not find that Defendants will be prejudiced by allowing Buck to call Ware as a witness. Additionally, the Court was able to contact the facility where Ware is currently housed and schedule his appearance via video conference. Thus, Buck will be allowed to call Ware as a witness.

Anthony White will be excluded from testifying. Based on White's affidavit, which mainly discusses the incidents of excessive force, it does not appear his testimony would be relevant to the remaining claims in this case, now that the counts against the IDOC Defendants have been settled. In the affidavit, White does not profess to have any knowledge as to the conditions of Buck's cell or Buck's interaction with Nurse Tripp, who refused to provide him medical treatment. White states he heard Buck ask for medical treatment on November 20 and 21 and that Buck did not receive any. However, Buck claims that he did not see Nurse Tripp until November 22. Based on White's affidavit, he does not have any knowledge of Buck's remaining claims, and his testimony would not be relevant.

Additionally, there are six Anthony Whites currently incarcerated within the Illinois Department of Corrections, and at this point, it has not been confirmed that any of them are the Anthony White who was celled next to Buck in November of 2016. Buck has not provided the

Court with where White is being held or any information, such as an inmate number, to help locate him. Buck argues that he was never provided an inmate roster in response to his discovery request, and therefore, due to his incarceration and limited access to information, he cannot provide information regarding White's location. He testified that information is not in his control. Defense Counsel for the IDOC Defendants testified that during discovery she provided a roster Bates Stamp numbered 395-406 to Buck and then to recruited counsel. The record shows that on August 20, 2018, Buck filed a motion to compel production of document request #16, which sought a copy of the inmate roster or offender 360 for North 2, 5 gallery, cells 503-508, and 7 gallery cells 701-10. In the motion, Buck stated it was unclear if he had received these documents. Defendants referred him to documents with the Bate Stamp numbers 395-406. (Doc. 121, 123, 153). At the time, the Court denied the motion and informed Buck that if the documents provided by Defendants were not responsive to his request, he should further explain why. Based on the record, he did not do so. That all being said, the Court will not, on the week of trial, take time determining White's whereabouts or direct Defendants to do so.

Likewise, the Court does not know the whereabouts of Willie Booker. There are two Willie Bookers and one William Booker currently in the custody of IDOC, but it is not clear if any of these individuals are the Willie Booker who wrote the affidavit. As previously stated, given the delayed disclosure, the Court will not further investigate Booker's location or direct Defendants to do so, and Willie Booker will be excluded from testifying. Additionally, the Court notes that in Booker's affidavit, he states he saw Buck while Buck was housed in the healthcare unit on November 1. Booker states he spoke to Buck who told him he was not allowed to clean himself because he was not given hygiene items. His suicide vest was dirty, and there was an odor coming from the cell. Booker observed the cell was not clean. (Doc. 1-1, p. 11). Because Buck's Eighth Amendment claim regarding the denial of hygiene items did not survive summary judgment, a

large part of Booker's testimony would not have been relevant to the issues to be tried even if admitted.

Finally, as to Dennis Rush, Buck testified on February 22, 2022, that Rush was celled in North 2, gallery 5, near Buck's cell. He stated he intended to call Rush to testify about the conditions of cell N2:05:07. Buck claims that Rush witnessed no one coming to the cell 05:07 to clean up the blood after Gay inflicted self-harm and was taken to the hospital, and prior to placing Buck in the cell. Additional, Buck claims Rush will testify that no one came to clean the cell at a later date. However, Rush's affidavit is unreadable (Doc. 1-1, 12-13), and Defendants have not had an opportunity to investigate and depose this witness. Thus, the Court does not find Buck's failure to supplement his interrogatory with Rush's name harmless or justified, and he is excluded. *See* FED. R. CIV. P. 37(c).

**Objections to Exhibits**

On February 18, 2022, Buck provided the Court an updated exhibit list, as directed. (Doc. 294). Defendants Meyer, Tripp, Pappas, and Weatherford object to Buck introducing into evidence the affidavits of Booker, White, Ware, and Rush, and the Complaint, as these documents constitute inadmissible hearsay. (Doc. 300).

The Court sustains the objection as to the affidavits of Booker, White, Ware, and Rush. Buck may use Ware's affidavit to refresh his memory, but the affidavit will not be entered into evidence. The Court also sustains the objection to Buck submitting his Complaint as an exhibit.

The Court reserves ruling on the objection to admission of Buck's grievance. Buck testified that he plans on offering his grievance to show notice to the Defendants. Thus, as stated when ruling on the motions *in limine* (Doc. 279, p. 3, 4, 8)*,* the Court will rule on the grievances as they are offered.

As to any administrative directives or job descriptions Buck intends to submit into evidence

or use when examining a witness, Buck is directed to first present a copy to the Court.

***Motion to Confer with Plaintiff (Doc. 297)***

Buck asks the Court to arrange and allow him to confer with his witnesses prior to trial. He points out that the Court "had alluded to [Plaintiff] at the Final Pretrial [that the Court would] do it but nothing has been done." (Doc. 297).

The motion is **DENIED**. Buck has had plenty of time to request Court assistance and IDOC approval to confer with other inmates regarding potential testimony in this case. The Court directed Buck at the Final Pretrial Conference to submit the names of his potential witnesses and their incarceration status in order to be able to determine if those individuals were properly disclosed, had knowledge of the alleged events in this case, and could quickly be contacted and their appearances arranged for trial, as well as coordinate an opportunity for Buck to confer with them *if possible*. Given the late hour, there is simply not sufficient time for Buck to follow IDOC regulation and receive approval to communicate with Ware. On the record, the Court asked Buck if he was ready to proceed with trial, and he said yes. The Court will not delay trial for Buck to speak with Ware. Accordingly, the motion is denied. (Doc. 297).

***Motion to Amend Final Pretrial Order (Doc. 299)***

For the reasons stated on the record and in light of the partial settlement, the Court **GRANTS IN PART** the motion to amend. (Doc. 299). The Court will enter an Amended Final Pretrial Order promptly.

**IT IS SO ORDERED.**

**DATED:   February 23, 2022**

                                                 *s/Stephen P. McGlynn*
                                                 **STEPHEN P. MCGLYNN**
                                                 **United States District Judge**